■ ALDA M. LODER, Respondent, v STATE OF NEW YORK,

926

Appellant. [607 NYS2d 151] —Mikoll, J. Appeal from a judgment in favor of claimant on the issue of liability, entered February 11, 1993, upon a decision of the Court of Claims (Hanifin, J.), following a bifurcated trial.

Claimant commenced this action against the State seeking damages for injuries she sustained when kicked in the face by a horse at the State University of New York at Cobleskill, allegedly due to the school's negligence. Claimant was a first-year student at the college, having enrolled in the equine studies in the fall of 1990. On March 18, 1991 she approached the tie stall housing a mare named Bebe to groom the mare in the performance of one of the duties of her two-week "barn duty" class, a one-credit required course. Bebe was character-ized as a dominant mare who was aggressive in terms of her relationship with other horses, especially during feeding. Bebe would whip her head around and try to bite other horses, or would "kick out" at them. However, she was not known as aggressive toward people.

Horses in the care and custody of the school were housed in two types of stalls, box stalls and tie stalls. Box stalls are large and allow a horse to move around. Tie stalls are narrow (five feet wide and 10 feet long) and limit a horse to walking into the stall and standing. Horses are kept in tie stalls by "butt ropes", ropes strung across the back opening of the stall which keep the horse from backing up. Horses in tie stalls are usually also tethered in front. Bebe, however, had broken front restraints in the past. At the time of the incident she was not tethered in front but confined by a second "butt rope" in the back of her stall.

As claimant was about to enter Bebe's stall on March 18, 1991, she announced herself to Bebe as she was instructed to, lifted the top butt rope and entered the stall by bending forward under it. Bebe then kicked her, fracturing her nose and her right eye socket.

After the liability phase of a bifurcated trial was completed, the Court of Claims determined that the State was 60% liable and claimant was 40% liable. The court found that Bebe never demonstrated a vicious propensity to kick or hurt humans and dismissed claimant's cause of action based on strict liability. As to claimant's cause of action alleging negli-gence, however, the court found that the State was negligent "in connection with the way that Bebe was confined to her stall and/or in failing to properly instruct claimant with regard to the proper method * * * of entering Bebe's stall".

Negligence generally is not available as a basis for relief where the injuries result from the acts of domestic animals (*see, Russell v Lepre,* 99 AD2d 489; *see also, Brown v Willard,* 278 App Div 728, *affd* 303 NY 727). In limited circumstances, however, it is recognized as a ground for liability. The Restatement (Second) of Torts § 518 states: "one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if * * * (b) he is negligent in failing to prevent the harm."

In our view, the record contains sufficient evidence to support the finding of the Court of Claims that the State was negligent in the training of claimant and in the housing of Bebe in the face of Bebe's known propensities. There was credible testimony that it is generally known that a horse may kick or otherwise injure a person who startles it and that no one should approach a horse directly from the rear. Here, those in charge of the barn were aware or should have been aware that Bebe would back out of a stall quickly and that keeping Bebe in a tie stall was dangerous because of her conduct in such confinement and her unwillingness to be tethered. There were box stalls or other housing where Bebe could have been kept on the grounds in a safer environment to those tending her.

Additionally, there were no written instructions on the procedure to be followed in entering Bebe's stall where she was untethered with two "butt ropes" in use. The assistant barn manager's method of entering, which claimant used, was said to be unsafe by the State's own witness. Claimant said she was never instructed on how to enter the tie stall and was apparently following the method used by the assistant barn manager. The trier of the fact could well conclude that claimant was not properly instructed concerning the way to safely enter Bebe's stall.

Cardona, P. J., Crew III, White and Weiss, JJ., concur. Ordered that the judgment is affirmed, with costs.