■ LOBLAW, INC., Respondent, v EMPLOYERS' LIABILITY ASSURANCE CORP., LTD., Appellant. — Order unanimously reversed, on the law and facts, with costs, and judgment entered in favor of defendant dismissing the complaint. Memorandum: Defendant Employers' Liability Assurance Corp. Ltd. (Employers) appeals from an order after a bench trial which directed entry of a money judgment against it in favor of plaintiff Loblaw, Inc. (Loblaw). Employers issued a Workmen's Compensation excess reinsurance contract to Loblaw for amounts which Loblaw would be required to pay under the Workmen's Compensation Law in excess of a $25,000 retention for which Loblaw was self-insured. Brownie Uzarowski, Loblaw's employee, injured his back on February 24, 1964. By April, 1966 Uzarowski had had a laminectomy and was diagnosed as having a mild, permanent partial disability. In June and July of 1966, Loblaw's agent for its workers' compensation claims, Albert F. Stager, Inc. (Stager), reported that the Uzarowski claim was one that could "prove very expensive because here we have a fairly young man and this can go on forever" and that "this case calls for a heavy reserve figure". There was a conflict in the proof as to the amount of the reserve, i.e., the amount reasonably anticipated to be paid out before a case is closed. In correspondence with the Workmen's Compensation Board, Stager set the reserve at $25,000, but a letter from

Stager to Loblaw set the reserve at $31,500. By May, 1969, a medical report indicated that Uzarowski would never return to work. In December, 1970 Stager reported to Loblaw that $15,089.79 in compensation and $5,971.25 in medicals had been paid and that Loblaw "might wish to contact the excess carrier". Although Trial Term found that notice was given on April 10, 1970, Loblaw concedes that Employers was not notified until June, 1972. Employers responded on July 18, 1972 that it reserved its rights under the policy and would investigate the claim. Subsequently, Employers disclaimed coverage on grounds that the notice was not timely. The issue presented is whether Loblaw complied with the following notice provision of the policy: "Notices to Company. D. The Self Insurer, upon the occurrence of any accident *which in the opinion of the Self Insurer may involve liability* on the part of the Company shall give immediate written notice thereof, with the fullest information obtainable at the time, to the Home Office of the Company at Boston, Massachusetts. The Self Insurer shall give like notice with full particulars on any claim made or suit brought on account of such accident. When required by the Company, the Self Insurer shall forward to it copies of every summons or other process that may be served upon the Self Insurer in connection with any accident which, in the opinion of the Company, may involve liability on the part of the Company." (Emphasis added.) Loblaw urges that the provision be construed so as to require notice only when an accident occurs or a claim is filed which, in its opinion, will involve excess coverage. Alternatively, it argues that notice is required only after the $25,000 retention has been paid. Employers; on the other hand, urges that written notice was required at such time as it appeared to Loblaw, in the exercise of good faith, that a claim arising out of an accident occurring during the policy period was likely to exceed the retention. Loblaw argues that there is a patent ambiguity which must be construed against the insurer and in favor of the insured (see *Breed v Insurance Co. of North Amer.*, 46 NY2d 351; *Sturges Mfg. Co. v Utica Mut. Ins. Co.*, 37 NY2d 69; *Hollander v Nationwide Mut. Ins. Co.*, 60 AD2d 380, mot for lv to app den 44 NY2d 646). That rule, however, is not applicable in a contest between two insurance companies (*Standard Mar. Ins. Co. v Federal Ins. Co.*, 39 AD2d 444, 446). While it is true that Loblaw is not an insurance company, where, as here, it acts as a self-insurer with respect to workers' compensation claims through its agent, a licensed insurance adjusting company, its status is more akin to that of an insurance company than to that of an individual who is inexperienced in matters of insurance coverage for whose benefit the rule was promulgated. Moreover, ambiguities will not be resolved in favor of the insured where the only reasonable construction which can be placed upon the words favors the insurer (*Hollander v Nationwide Mut. Ins. Co.*, 60 AD2d 380, 384, *supra*). Additionally, in interpreting such provision, the contract must be read as a whole to determine what the parties must have reasonably intended by its terms (*McGrail v Equitable Life Assur. Soc. of United States*, 292 NY 419; *Little v Blue Cross of Western N.Y.*, 72 AD2d 200). Mindful of the foregoing principles, we turn to examination of the policy. The purpose of the policy is to protect Loblaw against the risk of claims under the Workers' Compensation Law, exceeding $25,000. Employers requires notice of such claim in order to facilitate the setting of reserves, to predict liabilities, and to protect itself by investigating such claims (see *Security Mut. Ins. Co. of N. Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 440). Additionally, such notice invokes another paragraph of the policy, under which Employers is given the right to participate in settlement or defense of any claims. When viewed in the context of the purpose and intent of the policy, the phrase "which in the opinion of the Self Insurer" must be construed by an objective standard to mean when Loblaw knew or reasonably should have known that it was likely that excess coverage

would be involved. Similarly, the phrases "upon the occurrence of any accident" and "any claim made" must be reasonably construed as encompassing an ongoing notice obligation for accidents and claims rather than only the specific occurrence of an accident or the first filing of a claim. We must then decide at what point Loblaw should have been of the opinion that excess coverage might be required. In May, 1969, a medical report indicated that Uzarowski would never return to work. Settlement negotiations had reached an impasse, with Uzarowski demanding $15,000, plus attorneys' fees, and Loblaw offering only $8,000. By that time, over $14,000 in compensation and medical payments had been made. Thus, Loblaw could no longer reasonably anticipate settling the claim within the retainage. Inasmuch as Uzarowski was then 55 years of age, and was diagnosed as being unable to return to work, his compensation payments of $38.67 per week would obviously result in payments in excess of the retainage. Thus, by May of 1969, Loblaw was obligated to give "immediate notice" to Employers. "Immediate notice" has been interpreted to mean notice within a reasonable time (see *Imparato Stevedoring Corp. v Lloyd's Underwriters*, 27 AD2d 827, 828). Inasmuch as notice was not given until June, 1972, the notice provision was not satisfied and Employers was justified in disclaiming coverage. Loblaw's assertion that Employers should be estopped from disclaiming coverage is without merit. Although Employers did not disclaim liability until November, its original response in July included a reservation of rights and an indication that a disclaimer might ensue. With respect to Employers' acceptance of late notice in another claim by Loblaw in April, 1970, it need only be noted that whatever relevancy the other claim might be considered to have, the fact that it was accepted almost a year after notice should have been given on the Uzarowski claim renders that argument invalid. (Appeal from order of Erie Supreme Court, Crowley, J. — excess reinsurance contract.) Present — Simons, J.P., Hancock, Jr., Callahan, Denman and Schnepp, JJ.