**SEA INSURANCE CO., LTD., Plaintiff,**

v.

**WESTCHESTER FIRE INSURANCE COMPANY, Defendant.**

**No. 89 CIV. 8205 (SS).**

United States District Court,
S.D. New York.

March 31, 1994.

John C. Young, New York City, for plaintiff.

E. Richard Rimmels, Jr., Montfort, Healy, McGuire & Salley, Garden City, New York, for defendant.

### ORDER AND OPINION

SOTOMAYOR, District Judge.

Plaintiff Sea Insurance Co., Ltd. ("Sea Insurance") seeks a declaratory judgment that defendant Westchester Fire Insurance Company ("Westchester") has a duty to defend Jerome and Dawn Greene (the "Greenes") in a personal injury action arising out of a fatal car accident allegedly caused by an individual in the Greenes' employ. The parties entered into a stipulation of facts and submitted this case to me as a bench trial. For the reasons discussed below, Sea Insurance's request for a declaratory judgment is denied and the complaint is dismissed.

### BACKGROUND

The following are the relevant facts stipulated to by the parties. At the time of the accident, the Greenes owned a home at 210 Kawama Lane, Palm Beach, Florida, and had hired Elisha Townes ("Townes") to look after such home during their absence. On June 11, 1986, while driving a friend's car, Townes struck George W. Mergens ("Mergens") as she exited the driveway of 200 Kawama Lane, residential property owned by Valerie Mills ("Mills"). Townes was headed towards the Greenes' Palm Beach residence at the time of the collision. Mergens died as a result of the injuries he sustained.

The Greenes had two homeowners' insurance policies in effect on the date of the accident. The first, issued by Sea Insurance, identified 210 Kawama Lane, Palm Beach, Florida as the Greenes' "Residence Address," and 450 Park Avenue, New York, New York as their "Mailing Address" (the "Sea Policy"). The second policy was issued by Westchester (the "Westchester Policy"). The Westchester Policy, on its declarations page, listed 130 Hunting Ridge Road, Greenwich, Connecticut as the Greenes' "insured and mailing address." The declarations page also noted that the insured maintained an "additional residence," but did not specify the address of that additional residence.

Mergens' widow, Ann A. Mergens, brought a personal injury action against Townes, the Greenes and Mills for Mergens' injuries and subsequent death (the "Mergens Action").

The complaint in the Mergens Action asserts a respondeat superior theory of liability against the Greenes, alleging that Townes was acting in the scope of her employment for them when the accident occurred. The Greenes requested that Sea Insurance defend them in the Mergens Action, and Sea Insurance agreed. Sea Insurance sought to have Westchester share the costs of defending the Greenes in the Mergens Action, pursuant to the clause of the Westchester Policy that reads, "If ... a suit is brought against any insured for damages because of bodily injury ... to which this coverage applies, we will ... provide a defense at our expense by counsel of our choice." Westchester Policy at 9. Westchester refused to share in the defense costs, arguing that two exclusions in its policy relieved it of any obligation to defend the Mergens Action. This action followed.

### DISCUSSION

■ The sole issue presented in this case is the proper construction of two exclusions in the Westchester Policy—the "other premises exclusion" and the "vehicle exclusion." Before addressing these exclusions in detail, it is helpful to set forth certain principles of New York law under which the exclusions must be considered.[1] First, under New York law, an insurer's duty to defend is both distinct from, and broader than, its duty to indemnify. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984); *United Food Serv., Inc. v. Fidelity & Casualty Co. of N.Y.*, 189 A.D.2d 74, 594 N.Y.S.2d 887 (3d Dep't 1993). The duty to defend arises whenever the complaint in the underlying action contains allegations that conceivably bring the action within the scope of the litigation insurance purchased. *Seaboard*, 64 N.Y.2d at 310, 486 N.Y.S.2d at 876, 476 N.E.2d at 275.

■ Second, an insurer seeking to avoid its obligation to defend an insured based on a policy exclusion bears a heavy burden. Exclusions from coverage are construed narrowly, and "[t]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Casualty Co. v. Rapid–Am. Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 972, 609 N.E.2d 506, 512 (1993); *Seaboard*, 64 N.Y.2d at 311, 486 N.Y.S.2d at 876, 476 N.E.2d at 275. Thus, an insurer will be obliged to provide a defense unless it proves that "the allegations in the underlying complaint are 'solely and entirely' within specific and unambiguous exclusions from the policy's coverage." *Avondale Indus. v. Travelers Indem. Co.*, 887 F.2d 1200, 1205 (2d Cir.1989), *cert. denied*, 496

1. Both Sea Insurance and Westchester agree, albeit seemingly for different reasons, that New York law should govern this case, even though the Westchester Policy lists the Greenes' Connecticut home as the "residence premises." I agree. Federal courts sitting in diversity jurisdiction must apply the choice of law rules of the forum, *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and New York law requires courts to apply the law of the jurisdiction having "the most significant contacts with the matter in dispute." *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99, 101 (1954); *Fleet Messenger Serv., Inc. v. Life Ins. Co. of N. Am.*, 315 F.2d 593, 596 (2d Cir.1963); *see Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904, 907, 613 N.E.2d 936 (1993). In examining choice of law questions involving insurance contracts, New York courts consider the following factors: the location of the insured risk; the insured's residence; the place where the policy was issued and delivered; the location of the broker or agent placing the policy; the place where the premiums were paid; and the insurer's place of business. *Olin Corp. v. Insurance Co. of N. Am.*, 743 F.Supp. 1044, 1049 (S.D.N.Y.1990) (citations omitted), *aff'd*, 929 F.2d 62 (2d Cir.1991).

Under these factors, New York clearly has the most significant contacts to disputes arising out of the Westchester Policy. Although the Westchester Policy covers the Greenes' Greenwich, Connecticut home, the risks insured are not confined to any single location. The Westchester Policy extends coverage for losses to personal property owned or used by the Greenes wherever in the world such property might be located. Westchester Policy, § 1(c). Moreover, the significant aspects of the contract's formation are tied to New York, with Westchester, a New York corporation, writing the contract in New York and delivering it to the Greenes' broker in White Plains, New York. Accordingly, I, like the parties, conclude that New York law applies to this dispute.

U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990).

▮▮▮▮ Third, ambiguities in an insurance policy must be construed against the insurer in favor of the insured. However, this canon of construction, known as *contra proferentum*, applies only as against the insured, and not "in a contest between two insurance companies." *United States Fire Ins. Co. v. General Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir.1991) (citing *Loblaw, Inc. v. Employers' Liability Assurance Corp.*, 85 A.D.2d 880, 881, 446 N.Y.S.2d 743, 745 (4th Dep't 1981), *aff'd* 57 N.Y.2d 872, 456 N.Y.S.2d 40, 442 N.E.2d 438 (1982); *Standard Marine Ins. Co. v. Federal Ins. Co.*, 39 A.D.2d 444, 446, 336 N.Y.S.2d 692, 695 (1st Dep't 1972) (per curiam)). Moreover, even in disputes between insureds and their insurers, ambiguities in an insurance policy will not be resolved in the insureds' favor "where the only reasonable construction which can be placed upon the words favors the insurer." *Loblaw*, 446 N.Y.S.2d at 745.

With these principles in mind, I turn to the policy exclusions at issue in this case.

### A. *The "Other Premises" Exclusion*

▮▮▮ The first exclusion which Westchester contends negates its obligation to defend the Greenes is the "other premises" exclusion in Section II(1)(d) of the Westchester Policy. This provision excludes from coverage the insureds' personal liability for "bodily injury .. arising out of any premises owned or rented to any insured which is not an insured location." The Mergens Action against the Greenes triggers the "other premises" exclusion, argues Westchester, because the Greenes' alleged liability is premised on their employment of Townes at their Palm Beach residence, which is not an "insured location" under the Westchester Policy. Had Townes not been performing her duties as an employee at the Greenes' Palm Beach residence, the argument goes, there would be no theory of liability. Thus, the Palm Beach residence is an "integral part of the theory of the accident," Def. Mem. at 11, such that the Mergens Action can be said to "aris[e] out of" the Greenes' Palm Beach residence.

I do not accept this argument because the collision in this case can not reasonably be viewed as having "arise[n] out of" the Greenes' Palm Beach residence.

Apparently, no New York court has construed the phrase "arising out of any premises" under a homeowner's policy. Westchester's assertion that the Third Department did so in *Bianco v. Travelers Ins. Co.*, 99 A.D.2d 629, 472 N.Y.S.2d 184 (3d Dep't 1984) is plainly wrong. *Bianco* involved a different and much broader "other premises" exclusion, which denied coverage for bodily injury "arising out of any act or omission in connection with the premises (other than an insured premises) owned, rented or controlled by" an insured. Injuries stemming from a dog bite sustained by an infant on the uninsured premises fell squarely within that "other premises" exclusion, since, in the words of the *Bianco* court, there was "little doubt that the injury arose 'in connection' with the premises." 472 N.Y.S.2d at 185.

Courts in other jurisdictions interpreting the precise "other premises" exclusion involved in the instant case have reached different conclusions. Viewing the "arising out of" language as requiring some causal connection between the premises and the injury, several courts have held that this exclusion applies when the alleged injuries stem from some dangerous condition in uninsured premises, but not when they result primarily from tortious acts on such premises. For example, in *Lititz Mut. Ins. Co. v. Branch*, 561 S.W.2d 371 (Mo.Ct.App.1978), the court held that a dog bite did not "arise out of" uninsured premises simply because it occurred there. The *Lititz* court reasoned that "[l]iability for injuries caused by an animal owned by an insured arises from the insured's personal tortious conduct in harboring a vicious animal, not from any condition of the premises upon which the animal may be located." 561 S.W.2d at 374. Noting that the "arising out of" language was concerned more with the cause of the injuries than their situs, the *Lititz* court stated that if the insurer intended to "geographically limit the coverage provided for the tortious personal conduct of the insured," it could have done so

simply by excluding injuries "occurring on" other owned premises. *Id.*

Similarly, in holding that the insured's liability for a car accident caused by an intoxicated minor who had stolen whiskey from the insured's business did not "arise out of" any uninsured premises, the Supreme Court of Minnesota in *Lanoue v. Fireman's Fund Am. Ins. Cos.*, 278 N.W.2d 49, 54 (Minn. 1979), focused on the causal connection between the basis of liability and the premises. The *Lanoue* court reasoned that the "arising out of" language required "some causal relationship" between the premises and the "liability," and although the whiskey was stolen from the insured's office—an uninsured location—the insured's liability was causally related to the whiskey, his personal property, and not the premises where they were kept.

In *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855 (Ky.1992), the Supreme Court of Kentucky followed the courts' reasoning in *Lititz* and *Lanoue,* stating that the "arising out of" language "connotes the need for a direct consequence or a responsible condition." For the *Eyler* court, the critical legal question was whether the "[insured's] personal conduct or the premises was the greatest causative force in the harm which resulted." 824 S.W.2d at 858. Quoting the lower court opinion, the court concluded that the "injury did not flow from the [uninsured] premises, but from the unrelated tortious act of [the insured,] and thus, the "other premises" exclusion did not apply. *Id.; see also Newhouse v. Laidig, Inc.*, 145 Wis.2d 236, 426 N.W.2d 88, 91 (Ct.App.1988) ("arises out of" other premises exclusion did not apply because tortious act of insured causing the injuries were "entirely independent of the premises on which the injuries occurred"); *Hanson v. General Accident Fire & Life Ins. Corp.*, 450 So.2d 1260, 1261 (Fla. 4th Dist.Ct. App.1984) ("'arising out of' indicates an intention to narrow the scope of an exclusion to incidents that have a causal relationship to the premises, as opposed incidents that merely occur on such premises").

Other courts, although recognizing that the phrase "arising out of" implies some relationship with the premises, have urged a broad reading of identical "other premises" exclu-

sions. Two such cases, the facts of which Westchester contends most closely resemble those of the case at bar, are *St. Paul Fire & Marine Ins. Co. v. Insurance Co. of N.A.*, 501 F.Supp. 136, 139 (W.D.Va.1980), and *National Farmers Union Property & Casualty Co. v. Western Casualty & Sur. Co.*, 577 P.2d 961 (Utah 1978). In *St. Paul,* the underlying action was for property damage to land adjoining the uninsured premises which had been caused by a fire negligently set by the insureds on the uninsured premises. The *St. Paul* court rejected the plaintiff's argument that the exclusion only applied when the basis for the insureds' liability resulted from a condition in the premises, reasoning that if all the insurer sought to exclude was bodily injury or property damage resulting from a condition of the uninsured premises, it could have done so explicitly. Rather, the insurer "used the more encompassing phrase—'arising out of'"—and the *St. Paul* court stated it was constrained to interpret the exclusion broadly. However, the *St. Paul* court also recognized that even under the causal connection approach adopted in *Lanoue* and other cases, the plaintiff still could not prevail because the facts indeed established a "causal nexus between the premises and the insured's negligence giving rise to liability." 501 F.Supp. at 139.

The *St. Paul* court cited with approval the decision of the Utah Supreme Court in *National Farmers.* The *National Farmers* court held that an identical "other premises" exclusion precluded coverage for injuries sustained by a motorist when a horse escaped from the uninsured premises through an open gate and ran into a road where it was struck by a motorist. Interpreting the arising out of language broadly, the Utah Supreme Court found that the injuries arose from the uninsured premises even though the "active force leading to injury in plaintiff's complaint was an escaping horse" caused by the insured's negligence in leaving the gate open. 577 P.2d at 964.

I find the reasoning of *Lititz* and *Lanoue* far more persuasive than that of *St. Paul* and *National Farmers,* and certainly more in consonance with New York's practice of narrowly construing exclusionary clauses in in-

surance contracts. The phrase "arising out of" bespeaks causality; perhaps not a proximate link between liability and the uninsured premises, but a causal link nonetheless. Since, under New York law, exclusionary clause must be construed narrowly, the close causal connection between injury or liability and the uninsured premises required in *Lititz* and *Lanoue* seems apt.

This construction also comports with the interpretation accorded automobile insurance policies which cover bodily injury "arising out of the ownership, maintenance and use" of a motor vehicle by New York courts. Courts in New York consistently have held that an insurer has no duty to defend or indemnify an insured for injuries that neither stem from the "intrinsic nature" of the vehicle nor are caused directly by such vehicle. *E.g., Lumbermen's Mut. Casualty Co. v. Logan,* 88 A.D.2d 971, 971, 451 N.Y.S.2d 804, 805 (2d Dep't 1982).

Even were I to accept the broader notion of causality advocated in *St. Paul* and *National Farmers,* Westchester's interpretation of the "other premises" exclusion could not be sustained. Here, the connection between the uninsured premises and the basis of liability alleged in the underlying complaint is tangential, not causal. Any respondeat superior liability of the Greenes will arise not from their Palm Beach residence, but rather out of their employment of Townes. That Townes was heading towards the Greenes' residence when the accident occurred does not causally link the collision to the Palm Beach residence; it merely demonstrates that Townes was acting in the course of her employment at the time the accident occurred. Had Townes been heading towards the supermarket for the Greenes when she struck Mergens, the alleged basis for liability would be the same.

Moreover, even though the courts in *St. Paul* and *National Farmers* interpreted the "arising out of" language broadly, they found the "other premises" exclusion applicable because something either on, about or emanating from the uninsured premises was involved in or contributed to the accident. In *St. Paul,* the fire which caused the property damage at issue spread from the uninsured premises to the adjoining land where the damage occurred, and in *National Farmers,* the horse involved in the collision escaped through an open gate on the uninsured premises. By contrast, neither the physical space, attributes nor fixtures of the Greenes' Palm Beach residence were in any way related to the collision which fatally injured Mergens.

Because the basis for the Greenes' alleged liability is only tangentially related to their Palm Beach residence, and does not stem from any physical condition of that property, the injuries and wrongdoing complained of in the Mergens action can not be said to "arise out of" this residence. Accordingly, I find that the other premises exclusion does not apply to this case.

### B. *Vehicle Exclusion*

■ The vehicle exclusion, however, stands on a different footing. Section II(1)(e) of the Westchester Policy excludes coverage for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of ... a motor vehicle owned or operated by, or rented or loaned to any insured." Under the Westchester Policy, the term "insured" when used in Section II, includes "any person while engaged in your employment," but only "with respect to any vehicle to which this policy applies." Westchester Policy at 1. A "motor vehicle" refers, *inter alia,* to "a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration." *Id.* The term does not include, *inter alia,* "a motorized land vehicle in dead storage on an insured location" or "a motorized golf cart while used for golfing purposes."

Without question, Mergens' injuries and the Greenes' alleged vicarious liability "ar[ose] out of" a motor vehicle operated by Townes, an employee of the Greenes, which had been loaned to her by a friend. However, whether Townes can be considered an "insured" within the meaning of the "vehicle exclusion" is not readily apparent. The Westchester Policy considers employees "insureds" only under Section II, "with respect to any vehicle to which this policy applies."

Sea Insurance contends that this latter phrase is ambiguous, meaningless, and impossible to define under the terms of the Westchester Policy, because the policy, a homeowner's insurance policy, does not "apply" to vehicles. I disagree. The word "apply" appears in several places in the Westchester Policy, and typically means to cover or to include. For example, Section II(1) reads: "Personal Liability ... do[es] not apply to bodily injury ... which is expected or intended by the insured." Similarly, the defense provision of Section II also uses the term "applies," stating that Westchester will defend if suit is brought for damages for bodily injuries as "to which this coverage applies."

As for vehicles, the "Definitions" section, when read in conjunction with the "vehicle exclusion" in Section II, makes clear that bodily injury "arising out of" the ownership or use of certain motor vehicles is covered. For example, bodily injury resulting from a golf cart rented by an insured, and used by such individual while golfing, would not fall within the vehicle exclusion, because the golf cart would not be a "motor vehicle" under the Westchester Policy.

Consequently, I find the phrase "with respect to any vehicle as to which this policy applies," susceptible of two meanings, one rather strained given the parties' reasonable business expectations, the other less so. First, the phrase could refer to vehicles as to which the vehicle exclusion would not apply, such as the golf carts discussed above. That interpretation, however, is questionable, at best, since the vehicle exclusion would never apply to employees, and Westchester would be required to indemnify and defend employees of insured in cases where it would have no such obligation to the insureds themselves. Indeed, it would lead to the rather curious result that had the Greenes themselves instead of Townes hit Mergens, Westchester would not have been obligated to defend the Mergens Action.

The second reading of the phrase—that it refers to vehicles as to which the vehicle exclusion applies—is far more tenable, for it places insureds and their employees on an equal footing with respect to the vehicle ex-

clusion—a result more in line with the parties' reasonable business expectations. Indeed, when read in context, this is the only reasonable interpretation of this language since employees are considered insureds only under Section II, and the only provision in that section which discusses both vehicles and "insureds" is the vehicle exclusion.

The "meaning of particular language found in insurance policies should be examined 'in light of business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127 (2d Cir.1986) (citation omitted). Therefore, while I agree with Sea Insurance that the employee-as-insured definition is ambiguous, it must be read as placing employees on par with insureds as to the vehicle exclusion. Though Sea Insurance wishes it were otherwise, the well-settled rule that ambiguities must be read against the insurer has no application here in this dispute between two insurers. *United States Fire Ins. Co. v. General Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir. 1991); *Standard Marine Ins. Co. v. Federal Ins. Co.*, 39 A.D.2d 444, 446, 336 N.Y.S.2d 692, 695 (1st Dep't 1972) (per curiam). Thus, there is no justification for giving the employee-as-insured definition a tortured interpretation, contrary to reasonable business expectations.

Moreover, reading the ambiguous clause out of the Westchester Policy altogether, as Sea Insurance advocates, would contravene the well-settled rule that "[c]ontract provisions should be read to give them meaning and not to deprive them of any purpose." *Launois v. Midland–Ross Corp.*, 751 F.Supp. 452, 459 (S.D.N.Y.1990), *aff'd* 935 F.2d 1277 (2d Cir.1991); *see also Galli v. Metz*, 973 F.2d 145 (2d Cir.1992) (New York law disfavors a contractual interpretation that has the " 'effect of rendering at least one clause superfluous or meaningless' ") (citations omitted).

Because I find that Townes is an insured under the vehicle exclusion, and that the Mergens action arose out of a motor vehicle operated by Townes, I conclude that the vehicle exclusion applies, and Westchester,

228

accordingly, has no duty to defend the Mergens Action.

### CONCLUSION

For the reasons stated above, Sea Insurance's motion for declaratory judgment that Westchester has a duty to defend the Greenes in the Mergens Action is DENIED, and the Clerk of the Court is directed to enter judgment dismissing the complaint against Westchester.

**SO ORDERED.**