**SEA INSURANCE COMPANY, LIMITED, Plaintiff– Appellant,**

v.

**WESTCHESTER FIRE INSURANCE COMPANY, Defendant–Appellee.**

**No. 598, Docket 94–7434.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1994.

Decided March 29, 1995.

John C. Young, New York City, for plaintiff-appellant.

E. Richard Rimmels, Jr., Garden City, NY (Montfort, Healy, McGuire & Salley, of counsel), for defendant-appellee.

Before NEWMAN, Chief Judge, OAKES and CARDAMONE, Circuit Judges.

OAKES, Senior Circuit Judge:

Sea Insurance Company, Ltd. ("Sea") appeals from a judgment of the United States District Court for the Southern District of New York, Sonia Sotomayor, *Judge,* dismissing Sea's diversity action following a bench trial on stipulated facts. 849 F.Supp. 221 (S.D.N.Y.1994). Sea seeks a declaratory judgment that defendant Westchester Fire Insurance Company ("Westchester") has a duty to defend Jerome and Dawn Greene (the "Greenes") in a personal injury action arising out of a fatal car accident allegedly caused by an employee of the Greenes. As set forth below, we conclude that Westchester has no duty to defend, and we affirm the judgment.

## BACKGROUND

The material facts, as stipulated to by the parties and documented in the record, are as follows. At the time of the accident in question, the Greenes owned residences in Greenwich, Connecticut, and in Palm Beach, Florida. They had two homeowner's insurance

policies in effect—one issued by Sea, which identified the Greenes' Palm Beach residence as the "Residence Address" (the "Sea policy"), and one issued by Westchester, which identified the Greenwich residence as the "insured and mailing address" (the "Westchester policy," or the "policy").

The dispute between Sea and Westchester arises out of a June 11, 1986, auto accident in Palm Beach allegedly caused by the Greenes' Palm Beach housekeeper, Elisha Townes. While heading toward the Greenes' residence in a car she had borrowed from a friend, Townes struck and killed a bicyclist, George W. Mergens. Mergens' widow, Ann A. Mergens, brought a personal injury action against Townes, the Greenes, and the owner of the property next door to the Greenes' house (the "Mergens action"). The Mergens action asserted a *respondeat superior* theory of liability against the Greenes, alleging that Townes was acting within the scope of her employment for them when the accident occurred, though she was coming out of the next door neighbor's driveway at the time.

Pursuant to Sea's obligations under the Greenes' Palm Beach homeowner's policy, Sea provided the Greenes with a legal defense. When Sea asked Westchester to share in the cost of the defense, Westchester refused, contending that two exclusions in its policy relieved it of any obligation to defend.

This action followed, and the district court entered judgment for Westchester, from which Sea appeals.

## DISCUSSION

The sole issue on appeal, as before the district court, is the meaning under New York law [1] of two exclusions in the Westchester policy—the "other premises exclusion" and the "motor vehicle exclusion." The district court held that the other-premises exclusion did not apply, but that the vehicle exclusion did, relieving Westchester of any obligation to defend the Greenes. On appeal, Sea contends that neither exclusion applies. If neither exclusion applies, both parties agree, Westchester has a duty to defend the Greenes, and the judgment for Westchester must be reversed. If either of the two exclusions applies, the judgment must be affirmed.

Since we ultimately agree with the district court that the motor vehicle exclusion applies and relieves Westchester of any duty to defend, we do not consider the applicability of the other-premises exclusion.[2] The applicability of the motor vehicle exclusion, and hence Westchester's duty to defend, hinges on a somewhat tangled linguistic puzzle buried in Section II of the policy. We set out the relevant provisions of Section II below.

---

1. Sea does not challenge the district court's conclusion that because "New York clearly has the most significant contacts to disputes arising out of the Westchester Policy," New York law applies. *See* 849 F.Supp. at 223 n. 1.

2. The other-premises exclusion provides:
    1. **Coverage E—Personal Liability** ... do(es) not apply to bodily injury ...
    ....
    d.   arising out of any premises owned or rented to any **insured** which is not **an insured location** ...
    Policy, at 9 (emphasis in original).
    As the district court noted, 849 F.Supp. at 224, no New York court has construed the scope of an exclusion in a homeowner's policy for personal injury "arising out of" other premises. *Cf. Bianco v. Travelers Ins. Co.*, 99 A.D.2d 629, 629, 472 N.Y.S.2d 184, 185 (3d Dept.1984) (construing an "other premises" exclusion which denied coverage for bodily injury "arising out of any act or omission *in connection with* the premises (other than an insured premises) owned, rented or controlled by" an insured) (emphasis added).

Whether the New York Court of Appeals would conclude that Mergens' injury "arose out of" the Greenes' Palm Beach premises is, we think, not immediately apparent.

The court might conclude that the injury "arose out of" the Palm Beach premises on the ground that the sole source of the Greenes' liability is their status as Townes' employers. Since Townes was employed solely as caretaker of their Palm Beach residence, the court could reasonably conclude that the Greenes' liability "arises out of" that residence. On the other hand, the policy does not say that coverage is excluded where *liability* "arises out of other premises"; rather, it excludes coverage for *"bodily injury ...* arising out of" other premises. To say that the injury to Mergens, which did not occur on the premises of the Greenes' Palm Beach residence or as a result of a condition on those premises, "arose out of" those premises may well be stretching the meaning of "arose out of" beyond its ordinary usage. Because our decision turns instead on the motor vehicle exclusion, we do not have to predict how the Court of Appeals would decide this knotty little question.

While Section I of the policy provides coverage of the sort that one thinks of most readily in connection with a homeowner's policy—coverage for damage to the insured's listed residential premises and to the insured's personal property, whether on or off the premises—Section II, in addition, provides broad personal liability coverage. Coverage E, in particular, provides:

**COVERAGE E—PERSONAL LIABILITY**

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, we will:

    a. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

    b. provide a defense at our expense by counsel of our choice....

Policy, at 9 (emphasis in original).

Various exclusions follow, including the other-premises exclusion and exclusions for intentional torts and business and contractual liability. The exclusion that Sea contends on this appeal is ambiguous is Exclusion 1.e(2) (the "motor vehicle exclusion"), which provides as follows:

1. **Coverage E—Personal Liability** ... do[es] not apply to **bodily injury or property damage:**

    ....

    e. arising out of the ownership, maintenance, use, loading or unloading of:

        ....

        (2) a **motor vehicle** owned or operated by, or rented or loaned to any **insured**....

*Id.* (emphasis in original).

At issue is whether this exclusion applies to accidents arising out of *employees'* motor vehicle use—that is, whether employees generally are (and Townes in particular is) "insured" within the meaning of ¶ 1.e(2). Whether Townes is an "insured" for these purposes is addressed, somewhat obliquely, in the Definitions section of the policy. This section provides:

Under Section II, **"insured"** also means:

    ....

    d. with respect to any vehicle to which this policy applies, any person while engaged in your [the insureds'] employment....

*Id.* at 1 (emphasis in original).

The parties agree that the dispute hinges on the meaning of this last provision. They do not dispute that Townes, when she collided with Mergens, was "engaged in [the Greenes'] employment," as the definition requires. The phrase upon which the dispute turns is the preceding one: "with respect to any vehicle to which this policy applies." If the car driven by Townes *is* a "vehicle to which this policy applies," then Townes is an insured for purposes of the collision; consequently, her accident falls within the vehicle exclusion, and Westchester has no duty to defend. If the car is *not* a "vehicle to which this policy applies," Townes falls outside the exclusion, and Westchester must contribute to the cost of the defense.

The parties, not surprisingly, ascribe different meanings to the phrase. To Westchester (which contends that Townes is an "insured"), a "vehicle to which this policy applies" means, essentially, any vehicle falling under the policy's definition of motor vehicle.[3] In contrast, Sea suggests that the only possible reading of the phrase is "hopelessly ambiguous."

An insurer's duty to provide a defense to an insured is distinct from, and

---

3. The policy defines "motor vehicle" as follows:
    a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle.**
    b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 5a is not a **motor vehicle;**
    c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by any **insured** and designed for recreational use off public roads, while off an **insured location.** A motorized golf cart while used for golfing purposes is not a **motor vehicle;**
    d. any vehicle while being towed by or carried on a vehicle included in 5a, 5b or 5c.
Policy, at 1.

broader than, its obligation to indemnify. *Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 655, 609 N.E.2d 506, 514, 593 N.Y.S.2d 966, 974 (1993); *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 476 N.E.2d 272, 274–75, 486 N.Y.S.2d 873, 875–76 (1984). An insurer seeking to avoid its obligation to defend an insured on the basis of a policy exclusion bears a "heavy burden." *Continental Casualty*, 80 N.Y.2d at 654, 609 N.E.2d at 513, 593 N.Y.S.2d at 973. "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Id.* at 652, 609 N.E.2d at 512, 593 N.Y.S.2d at 972 (following *Seaboard Surety*, 64 N.Y.2d at 311, 476 N.E.2d at 275, 486 N.Y.S.2d at 876).[4]

■ The issue is thus whether the policy meets the *Seaboard Surety* test of spelling out the motor vehicle exclusion, as applied to employees, in "clear and unmistakable" language, or whether the policy language is instead "subject to [some] other reasonable interpretation."

We agree with the district court that the phrase "any vehicle to which this policy applies" probably fails the *Seaboard Surety* test when considered in isolation. It is by no means evident on its face, as Westchester contends, that a "vehicle to which this policy applies" means any vehicle falling under the Policy's definition of motor vehicle. A plausible reading, for instance, might be that a "vehicle to which this policy applies" means a vehicle to which the policy's *coverage* applies—that is, any vehicle not falling within the policy's motor vehicle exclusion.[5]

We are not charged, however, with considering the phrase in isolation. Rather, "the language of an insurance policy must be construed with reference to the risk, subject matter and purpose of the policy." *Show Car Speed Shop, Inc. v. United States Fidelity & Guaranty Co.*, 192 A.D.2d 1063, 1064, 596 N.Y.S.2d 608, 609 (4th Dept.1993) (citing *DeForte v. Allstate Ins. Co.*, 81 A.D.2d 465, 467, 442 N.Y.S.2d 307, 309 (4th Dept.1981)). We will find a word or phrase ambiguous and, hence, subject to rules of construction against the drafter, only

when it is capable of more than a single meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*United States Fire Ins. Co. v. General Reinsurance Corp.*, 949 F.2d 569, 572 (2d Cir. 1991) (quoting *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988))

**4.** We cannot accept the district court's conclusion that the *contra proferentem* principle, which provides that "where there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer," *Lavanant v. General Accident Ins. Co. of America*, 79 N.Y.2d 623, 629, 595 N.E.2d 819, 822, 584 N.Y.S.2d 744, 747 (1992), does not apply because this dispute lies between two insurers. *See Sea Insurance*, 849 F.Supp. at 227 (citing *United States Fire Ins. Co. v. General Reinsurance Corp.*, 949 F.2d 569, 573 (2d Cir.1991), and *Standard Marine Ins. Co. v. Federal Ins. Co.*, 39 A.D.2d 444, 446, 336 N.Y.S.2d 692, 695 (1st Dept.1972) (per curiam)).

The district court's conclusion that *contra proferentem* does not apply is at odds with its conclusion (with which we agree) that the *Seaboard Surety* test applies. The *Seaboard Surety* rule, construing exclusions against the insurer unless they are stated in "clear and unmistakable" language, is merely a specific, heightened application of *contra proferentem*. *See, e.g., Breed v.*

*Insurance Co. of North America*, 46 N.Y.2d 351, 357, 385 N.E.2d 1280, 1284, 413 N.Y.S.2d 352, 357 (1978) ("Ambiguities in an insurance policy must be construed in favor of the insured. This rule is especially applicable where, as here, the ambiguity appears in a clause excluding coverage.") (citations omitted). No authorities cited by the parties convince us that the New York Court of Appeals would find the *Seaboard Surety* rule inapplicable to this dispute over construction of a homeowner's policy. *See, e.g., United States Fire*, 949 F.2d at 573–74 (explaining circumstances in which *contra proferentem* may be inapplicable, *i.e.*, cases which, unlike the instant case, "involv[e] bargained-for contracts, negotiated by sophisticated parties") (quoting *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n. 2 (2d Cir.1983)).

**5.** This would include vehicles not falling under the policy's definition of "motor vehicle," such as a golf cart rented by an insured and used on a golf course. *See* note 3 *supra*.

(internal quotation marks and citations omitted).

When we consider Westchester's vehicle exclusion in "the context of the entire integrated agreement" and with reference to the policy's "risk, subject matter and purpose," the apparent ambiguity of the phrase disappears, and it becomes evident that only one reasonable interpretation is possible. Sea's reading—that "any vehicle to which this policy applies" means any vehicle not falling within the policy's *motor vehicle exclusion*— suffers from a fatal circularity that would render the policy meaningless. This becomes apparent if the components of the policy are analyzed in sequence.

(1) Coverage E provides broad personal liability coverage against suits "brought against any insured for damages because of bodily injury." This coverage is subject, however, to (2) the motor vehicle exclusion: Westchester will have no duty to defend against actions "arising out of the . . . use . . . of . . . a motor vehicle . . . operated by . . . any insured." The first uncertain variable here is the word "insured." To determine whether Townes is an "insured," and the action accordingly excluded, one must turn to (3) the definition of "insured": an employee, "with respect to any vehicle to which this policy applies." To determine whether the vehicle in question is one "to which this policy applies," Sea's answer is: It is one which does not fall under the motor vehicle exclusion; that is, one not excluded by Step 2. When one returns to Step 2, of course, one is directed once again to Step 3, and so on, in an endless circle. The motor vehicle exclusion refers us to the definition of "insured," and the definition of "insured" refers us back to the motor vehicle exclusion, *ad infinitum.*

One might conclude, of course, as Sea urges, that this potential circularity renders the motor vehicle exclusion hopelessly ambiguous with respect to employees. A more sensible conclusion, however, would be that it is *Sea's reading* that is hopelessly tangled and which could not have been intended by rational drafters of the policy.

Westchester's reading of the vehicle exclusion, in contrast, appears eminently reasonable if one looks to the exclusion's purpose. The exclusion, of course, seeks to place the vehicular liability of insureds outside the scope of the policy. By defining an insured's employee as an insured "with respect to any vehicle to which this policy applies," Westchester apparently attempts, albeit a little clumsily, to bring employees within the scope of the motor vehicle exclusion—to make clear that the exclusion applies whether the vehicle in question is driven by insureds themselves or by their employees. The definition says, in effect, "employees count as insureds for purposes of any motor vehicle exclusion in this policy."

This interpretation is consonant with the "risk, subject matter and purpose" of the policy. *Show Car*, 192 A.D.2d at 1064, 596 N.Y.S.2d at 609. That is, it places employees, as well as insureds, within the motor vehicle exclusion, ensuring that Westchester will not have to provide a defense to insureds for vehicular claims brought either against them or against their employees. In contrast, we can divine no rational business purpose that would be served by the exclusion as interpreted by Sea.

If one were to look beyond the circularity of Sea's reading to divine a plausible intended purpose, only one intention other than Westchester's appears possible. If the parties did not intend, as Westchester urges, to treat employees and insureds alike for purposes of the vehicle exclusion, they must necessarily have intended to treat them differently; they must have intended to say, in effect, "An employee is *not* an insured for purposes of the motor vehicle exclusion." As the district court correctly concluded, however, this would produce an anomalous result. If an employee were not an "insured" for purposes of the vehicle exclusion, then the exclusion would apply to insureds but not to employees. The result would be, as the district court noted, that

> Westchester would be required to indemnify and defend employees of insured [sic] in cases where it would have no such obligation to the insureds themselves. Indeed, it would lead to the rather curious result that had the Greenes themselves instead of Townes hit Mergens, Westches-

ter would not have been obligated to defend the Mergens Action.

849 F.Supp. at 227.

We conclude, accordingly, that of the two proffered interpretations, Sea's is fatally circular and serves no rational purpose, while Westchester's, in contrast, avoids circularity and serves a readily apparent and reasonable purpose. Given this choice, we cannot conclude that the exclusion fails the *Seaboard Surety* test of clarity. While Westchester obviously has not crafted an exclusion clause that speaks with crystalline clarity, it *has* written one which is possessed of only one reasonable meaning. As Westchester's interpretation accords with the reasonable expectations of the parties, and as the exclusion is "subject to no other reasonable interpretation," *Seaboard Surety,* 64 N.Y.2d at 311, 476 N.E.2d at 275, 486 N.Y.S.2d at 876, the exclusion must be construed as Westchester urges.

### CONCLUSION

Applying Westchester's interpretation to the vehicle exclusion, we conclude that Westchester has no duty to defend the Greenes, and we affirm the judgment of the district court.