■ MARSHA MARONEY, Individually and as Parent and Guardian of MARK MARONEY, an Infant, Respondent, v NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY, Appellant. (And a Third-Party Action.) [782 NYS2d 287]—

Mugglin, J. Appeal from an order of the Supreme Court (Monserrate, J.), entered August 25, 2003 in Otsego County, which, inter alia, denied defendant's cross motion for summary judgment.

In June 1997, plaintiff made arrangements for her then-six-

year-old son, Mark, to be cared for during the day at the home of third-party defendants John J. Morris and Deborah A. Morris (hereinafter collectively referred to as the Morrises), by Deborah Morris's then-14-year-old daughter, Ashley. On the morning of June 19, 1997, plaintiff dropped off Mark for what was scheduled to be the first day that Ashley watched him. After plaintiff left, Deborah Morris indicated that she had to go across the road to the barn, which contained their horses, as well as other horses boarded for a fee, to do some chores before she left for work. Since Ashley was still dressing, Deborah Morris asked Mark if he would like to go with her. The child agreed and accompanied Deborah Morris while she, among other things, fed the horses. Unfortunately, as she was leading one of the boarded horses out of the barn to the pasture, Mark got behind the horse and was kicked in the forehead, suffering a fractured skull with lasting physical and mental effects.

Initially, the Morrises' entire property was insured under a homeowner's policy issued by defendant. When the Morrises built the barn on the east side of the highway (their house was located on the west side), defendant's policy was amended to cover farming operations east of the highway. However, once John Morris and his cousin, third-party defendant Thomas C. Morris, started a horse boarding business* at the barn, the policy was amended on May 28, 1997, deleting coverage for all property east of the highway as defendant will not insure a horse boarding business. As a result, John Morris and Thomas Morris obtained a separate policy issued by the Broome County Cooperative Fire Insurance Company for the east side of the highway.

The Morrises provided notice of the accident to both insurance companies and defendant sent a disclaimer letter which begins with a verbatim restatement of a coverage exclusion excluding liability coverage for injuries "arising out of business pursuits of an insured." The letter next lists the exclusion for injuries "arising out of a premises . . . owned by an insured . . . that is not an insured location." Then, the letter "additionally" refers to endorsement H0-322, which describes circumstances under which home day care services could constitute a business which would likewise not receive liability coverage. The letter next restates a portion of the endorsement and notes again that the policy "does not provide Section II—[l]iability

---

\* We note that this business was operated under the name of "Soft Meadow Stables." The Morrises listed this operation as a business in their tax returns, kept a separate checking account and required others who boarded horses with them to sign contracts.

[c]overages because a business of an insured is excluded," and concludes by summarizing the denial of the request for coverage by restating: (1) "The accident occurred as a result of business pursuits," (2) "The accident occurred on premises you own which is not an insured location" and (3) "[H]ome day care services are considered to be a business, which is excluded as outlined above."

In February 2000, plaintiff, individually and on behalf of Mark, commenced a personal injury action against the Morrises and Thomas Morris, alleging negligent supervision by Deborah Morris. The Morrises sent a copy of the complaint to defendant, which sent a second disclaimer letter restating its reasons and elaborating that the accident "occurred at your business property while you were undertaking your duties there." In September 2001, plaintiff commenced this action against defendant seeking a declaration that defendant is obligated to defend and indemnify the Morrises from any claims arising out of Mark's injury. Defendant's answer contained a counterclaim naming the Morrises as defendants in order to bind them to any judgment. Plaintiff moved for summary judgment seeking a declaration that defendant was obligated to defend and indemnify the Morrises, and defendant cross-moved requesting a declaration that it had no such obligation. Supreme Court determined that none of the disclaimers applied and declared that, under the terms of the policy that defendant issued to the Morrises, defendant was required to defend and indemnify them. Defendant appeals.

We begin our analysis, as did Supreme Court, by observing some well-settled rules which apply to insurance coverage disputes. "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage' " (*Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997], quoting *Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 67 [1991]). In order "[t]o be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision" (*Frontier Insulation Contrs. v Merchants Mut. Ins. Co., supra* at 175). Further, an insurer's disclaimer "is

strictly limited to those grounds stated in the notice of disclaimer" (*2540 Assoc. v Assicurazioni Generali*, 271 AD2d 282, 284 [2000]), which disclaimer must clearly apprise the insured of the grounds on which the disclaimer is based (*see Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334, 340 [2000]; *General Acc. Ins. Group v Cirucci*, 46 NY2d 862, 864 [1979]).

We reverse because we are of the view that defendant has met its burden with respect to two of the exclusions. First, given the specificity of the disclaimer letter, viewed in light of the factual background involving the amendments to defendant's policy, we disagree with Supreme Court's conclusion that the disclaimer letter denying coverage on the basis that "the accident occurred as a result of business pursuits" was referring only to the day care services exclusion and not the horse boarding business. In Supreme Court's opinion, because the horse boarding business was not specifically referenced, the first and third exclusions must be read together as referring only to home day care services. We disagree. When the letter is read in its entirety, it is clear that the insurance company is referring to separate provisions of the policy. Both the body of the letter and the summary contain the same format: (1) there is a business exclusion, (2) there is a location exclusion, and (3) day care falls within the business exclusion also. Any other reading makes (1) and (3) redundant. Given the very recent amendment to defendant's policy excluding from coverage the premises on which the horse boarding business was being conducted, there can be no doubt that the insureds knew that defendant was disclaiming on the basis of three exclusions in the policy. Moreover, we reject plaintiff's argument that, while concededly the Morrises were operating a horse boarding business, the "activities which are usual to nonbusiness pursuits" exception found in the policy under the business pursuits exclusion applies because Deborah Morris's alleged negligent supervision of the child was not incident to her business pursuit of boarding horses. We are of the view that plaintiff's reliance on *Lamb v Security Mut. Ins. Co.* (278 AD2d 855 [2000]) and *Gallo v Grosvenor* (175 AD2d 454 [1991]) is misplaced. In *Lamb*, the insured plaintiff's 21-year-old daughter was babysitting a two year old in the insured plaintiff's premises. The child was bitten by the insured's dog and the Fourth Department held that allegations of strict liability for the dog's action and negligent supervision of the dog were not incident to the daughter's babysitting business (*Lamb v Security Mut. Ins. Co., supra* at 855-856). In *Gallo*, a babysitter's son sexually abused a child she was caring for in her home. We held that a cause of action against the babysitter for the

negligent supervision of her own child was not incident to her business pursuit (*Gallo v Grosvenor, supra* at 455-456). Here, in stark contrast, it was precisely because Deborah Morris was engaged in her business pursuit—leading a boarded animal from the barn—that she was allegedly inattentive to the child and the child was injured. Hence, the exclusion, and not the exception to the exclusion, is applicable.

With respect to the second basis for excluding coverage, there is no factual dispute that the barn is owned by the Morrises and that it is a location not insured by defendant. Supreme Court concluded, however, that since the child was initially left at the house, insured by defendant, before being taken across the road, the accident arose out of an insured location. New York case law interpreting the phrase "arising out of a premises" as used in a homeowner's policy is not definitive. In other jurisdictions, there are conflicting views as to whether the phrase excludes coverage for injuries causally connected to some dangerous condition of the uninsured premises as opposed to injuries arising primarily from the insured's personal tortious conduct (*see e.g. Sea Ins. Co. v Westchester Fire Ins. Co.*, 849 F Supp 221, 224 [1994], *affd on other grounds* 51 F3d 22 [1995]). This debate is not applicable here since there is simply no view of the facts, nor is one alleged, that the insured premises were in any way defective or that personal tortious conduct of an insured occurred on the insured premises. The sole allegation is that Deborah Morris negligently supervised the child while in the uninsured barn. There exists no causal connection between the injury and the insured premises (*see e.g. Bianco v Travelers Ins. Co.*, 99 AD2d 629, 629-630 [1984]).

Lastly, although rendered academic by this decision, we agree that the home day care services exclusion does not apply. Assuming arguendo that Ashley was engaged in a business pursuit, she is not a party in any of the lawsuits and, significantly, she was not supervising Mark at the time of the accident. There is no real dispute here that Deborah Morris was watching Mark for a short time that morning to be "nice" to a little boy she liked, as well as to give Ashley a chance to "get dressed," and did not involve a "profit motive" (*Allstate Ins. Co. v Noorhassan*, 158 AD2d 638, 640 [1990]). Insurance policies are to be viewed as separate contracts where there are multiple insureds (*see Fulmont Mut. Ins. Co. v New York Cent. Mut. Fire Ins. Co.*, 4 AD3d 724, 725-726 [2004]; *Fadden v Cambridge Mut. Fire Ins. Co.*, 27 AD2d 487, 488 [1967]), and Deborah Morris was not engaged in the provision of babysitting services as a business pursuit.

Crew III, Peters and Rose, JJ., concur.

Cardona, P.J. (concurring in part and dissenting in part). While I agree with the majority's conclusion that defendant did not establish a basis for the "[h]ome day care services" exclusion, I do not agree that the remaining two exclusions bar coverage under the particular circumstances herein and, accordingly, respectfully dissent from that part of the decision.

With respect to the "uninsured premises" exclusion, it should be noted that plaintiff's homeowner's policy clearly contemplated coverage for negligent acts by its insureds occurring off the insured premises. Under the "Liability Coverages" section of the policy, Coverage E concerns personal liability for bodily injury caused by an "occurrence"[1] and Coverage F provides coverage for medical payments to "a person *off* the insured location, if the bodily injury . . . is caused by the *activities* of an insured" (emphasis added). Thus, it appears clear that, for example, had third-party defendant Deborah A. Morris taken plaintiff's son to a neighbor's barn and the accident occurred in a similar way, defendant's homeowner's policy would certainly have provided coverage for the injuries. Here, however, the accident occurred at the barn of Deborah Morris and third-party defendant John J. Morris, which was not covered by defendant's policy, and, therefore, defendant maintains that coverage does not exist based upon the policy exclusion providing that coverage does not apply to bodily injury "arising out of a premises . . . owned by an insured . . . that is not an insured location."

In my view, defendant's position does not withstand close scrutiny. In construing that exclusion, this Court is clearly bound by its precise language. Accordingly, the majority's reliance on the case of *Bianco v Travelers Ins. Co.* (99 AD2d 629 [1984]) to apply the exclusion is not persuasive, since, as noted in the case of *Sea Ins. Co. v Westchester Fire Ins. Co.* (849 F Supp 221, 224 [1994], *affd* 51 F3d 22 [1995]), the exclusion in *Bianco* contains different and much broader language than that employed in cases such as the one before us. Specifically, in *Bianco*, the insurance policy clearly excluded coverage for injuries arising from the insured's *own acts or omissions* in connection with the uninsured premises (*Bianco v Travelers Ins. Co., supra* at 629). In contrast, the "arising out of" exclusion in this case does not reference the insured's conduct, nor does it, as it so easily could have, exclude injuries arising "on" uninsured premises or in connection with the "use" of said premises. The precise language before us appears to more logically exclude

---

1. An "occurrence" is defined in the policy as "an accident . . . which results, during the policy period, in: a. bodily injury; or b. property damage."

from coverage only those injuries causally connected to some dangerous condition of the uninsured premises (which its insured owns and has control over) as opposed to injuries arising primarily from the insured's negligent acts or omissions (*see Sea Ins. Co. v Westchester Fire Ins. Co., supra; see also Callahan v Quincy Mut. Fire Ins. Co.*, 50 Mass App Ct 260, 264 n 5, 736 NE2d 857, 860 n 5 [2000]). Given the absence of proof of a dangerous condition on the property herein and the assertion that the injuries occurred because of the actions of the insured in negligently supervising the child,[2] I must conclude that the proof herein does not indicate that the injuries herein arose out of a condition on the insured premises as opposed to negligent conduct of the insured.

Turning to the purported "business pursuits" exclusion pertaining to the horse boarding business, I agree with Supreme Court that the disclaimer failed to sufficiently identify that policy exclusion and, therefore, it can properly be considered waived (*see Kokonis v Hanover Ins. Co.*, 279 AD2d 868, 869-870 [2001]; *Cain v Allstate Ins. Co.*, 234 AD2d 775, 776 [1996]). Significantly, "an insurer seeking to exclude coverage 'must do so "in clear and unmistakable" language' and any exclusions are given a strict and narrow interpretation" (*Bragin v Allstate Ins. Co.*, 238 AD2d 773, 774 [1997], quoting *Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984], quoting *Kratzenstein v Western Assur. Co. of City of Toronto*, 116 NY 54, 59 [1889]). Thus, a disclaimer in a personal injury action is held to a high degree of specificity (*see General Acc. Ins. Group v Cirucci*, 46 NY2d 862, 864 [1979]). It is the insurer's burden to establish the applicability of the claimed exclusion, and any ambiguity perceived in its language *"must be strictly construed against the insurer"* (*Allstate Ins. Co. v Noorhassan*, 158 AD2d 638, 639 [1990] [emphasis added]).

Here, a review of defendant's disclaimer demonstrates the absence of the required specificity. It cannot be denied that the disclaimer only specifically referenced the day care business and *made no mention of the horse boarding business* in any respect. While the majority makes a plausible argument in favor of the insurer's position, it is my opinion that the language in the disclaimer creates an ambiguity which should be construed against defendant, not the insured. Furthermore, I believe that

---

**2.** The proof does not indicate a claim of negligence arising from the horse that kicked the child. The propensity of horses to kick when startled from behind is well known and there are no allegations herein that the horse was vicious (*see e.g. Loder v State of New York*, 200 AD2d 925, 927 [1994]; *Doyle v Monroe County Deputy Sheriff's Assn.*, 195 Misc 2d 358, 361-362 [2003]).

speculation as to what the insurer may have intended and what the insureds may have assumed was meant by the language is inappropriate. Accordingly, I would affirm the finding of waiver.

In any event, regardless of the waiver issue, on the merits, it is my opinion that the business pursuits exclusion does not apply. Although that provision does exclude liability and coverage for bodily injury "arising out of business pursuits of an insured," it nevertheless contains an exception providing that the "exclusion does not apply to: . . . activities which are usual to non-business pursuits." In determining the applicability of that exception to the facts of this case, I find the reasoning in the case of *Gallo v Grosvenor* (175 AD2d 454, 456 [1991]) to be compelling. *Gallo* involved a person who was engaged in the business pursuit of babysitting who was also undertaking the nonbusiness pursuit of supervising her own child. In that case, the plaintiffs did not allege that the insured was negligent in her business pursuit but, instead, they argued that she was negligent in her nonbusiness activity, i.e., the supervision of her own child (*id.*).

The parallel to the subject case is apparent. Here, plaintiff is not alleging that Deborah Morris was negligent in her business activity of handling the boarded horse. Instead, they argue that, while she was engaged in the business pursuit of caring for a boarded horse, she was negligent in the supervision of the child; childcare being an activity that was clearly "incident to a non-business pursuit" (*id.* at 456). Since the care and supervision of the child was clearly not incident to Deborah Morris's business pursuit of boarding horses (*see id.*),[3] I must conclude that, regardless of the waiver issue, the circumstances herein come within the exception to the business pursuits exclusion.

Inasmuch as it is my view that none of the exclusions advanced by defendant has been established, I would affirm Supreme Court's ruling that defendant was obligated to defend and indemnify plaintiff pursuant to the homeowner's policy issued by defendant.

Ordered that the order is reversed, on the law, with costs, plaintiff's motion denied, defendant's cross motion granted and it is declared that defendant has no insurance coverage obligations in connection with plaintiff's underlying action.

---

**3.** Notably, since it is clear that the child was not in the barn as a customer of the horse boarding business, this raises another issue as to exclusion's inapplicability (*see generally* 16 Am Jur Proof of Facts 3d 355 § 29).