## Karcher *v.* Security Mutual Life Insurance Company, Appellant.

Argued April 22, 1958. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

Before WEISS, J.

*Gilbert J. Helwig,* with him *P. K. Motheral,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Charles L. Stonage,* with him *Alexander C. Tener, Lester K. Wolf,* and *Tener, VanKirk, Wolf & Moore,* for appellee.

OPINION BY GUNTHER, J., June 11, 1958:

This appeal is from the order of the court below granting plaintiff's motion for a new trial.

The jury returned a verdict for plaintiff for $616.20 which is the amount of the first annual premium paid

by the insured. The suit was in assumpsit to recover the proceeds of a $20,000.00 life insurance policy issued to Dr. Karcher.

Dr. Karcher applied to the defendant company for life insurance on January 6, 1953, and a policy was issued on February 11, 1953. The evidence reveals that on the day following the application, he consulted a stomach specialist. The application provided that if applicant consulted or was treated by any physician between the date of his medical examination and the delivery of the policy, the policy should be void. The application also certified as to the state of his health and that the answers were true and complete. On June 12, 1953, X-ray studies disclosed that Dr. Karcher was suffering from a cancer of the stomach, the growth of which had been in progress for some time. He died on July 7, 1953 following an exploratory operation.

Defendant denied liability on the grounds that the insured misrepresented the state of his health in the application, and that his failure to report a consultation with a physician on the day following his insurance medical examination was a breach of an express provision of the policy.

The court below granted a new trial, because it was convinced that there was no credible testimony from which fraud or bad faith on the part of the applicant could be inferred.

The application stated as follows: "Question 1. State all illnesses, diseases, accidents or operations you have had since childhood. Give dates, recurrences, complications. A. T & A-1935. Esophageal diverticulum operated. 1938. Good result. Appendectomy and cholecystectomy 1925. Had been having indigestion. Good result. Laceration of upper lip, 1947. Automobile accident. Disabled 7 days.

Question 2. Have you ever had an electrocardiagram? A. No.

Question 7. Have you ever been a patient in any infirmary, sanitarium, institute, asylum or hospital? A. Yes. For operations.

Question 8. Have you now, or have you ever had, any illness, injury, disease or disorder other than as stated above? A. No."

Defendant contends that insured concealed the following: 1. He had suffered recurring symptoms of gastric distress throughout his adult life. 2. He consulted a physician on January 7, 1953, the day following his application for insurance because of a recurrence and severity of pain. 3. He failed to reveal that he had an electrocardiagram taken in 1943 and one in 1945, the latter, in connection with a coronary. 4. He reported an operation in 1938 for removal of an esophageal diverticulum with good results, whereas in fact it had not been with good result according to the testimony of Dr. Hershenson.

The other point raised by defendant company in defense of its position is based on the clause in the application which provides that the company would incur no liability if the applicant was treated by a physician between the date of his examination and the date of the delivery of the policy. The insured was examined on January 6, 1953. He consulted a physician on the day after and the policy was delivered on February 11, 1953. When he consulted Dr. M. A. Hershenson on January 7, 1953 he complained of symptoms of indigestion and of losing weight.

In addition to the testimony of Dr. Hershenson, defendant also had the benefit of the testimony of Dr. Kyreges who attended the insured from June 25, 1953 to July 7, 1953. He testified that the symptoms experienced by the insured when he applied for the in-

surance marked the onset of cancer. The interval between the application and the death was six months.

Dr. Hershenson also testified that the form of cancer found in the insured was one of the most slowly growing cancers and that by June 12, 1953 it had reached a state of advanced growth.

Dr. Kyreges pointed out that the onset of the cancer coincided with the visit of the insured to Dr. Hershenson on the day following the application for insurance.

The history of the case given by the insured upon his entrance to the hospital in June 1953 reveals insured's statement that he lost weight in the preceding six months and noted loss of energy.

Under the circumstances in this case, we believe the lower court erred in granting a new trial. Where all the facts, as here, justify the jury's verdict, the granting of a motion for a new trial goes beyond the use of legal discretion. Ordinarily the Appellate Courts will not interfere with the exercise of judicial discretion unless there is evidence of abuse. *Decker v. Kulesza,* 369 Pa. 259, 85 A. 2d 413; *Carroll v. Pittsburgh,* 368 Pa. 436, 84 A. 2d 505.

Statements in an application for insurance are material to the risks assumed by the insurer. Where answers are knowingly made to such questions with the intention to mislead the insurer, there can be no recovery. *Evans v. Penn Mutual Insurance Co.,* 322 Pa. 547, 186 A. 133; *Prevete v. Metropolitan Life Insurance Co.,* 343 Pa. 365, 22 A. 2d 691.

The statements made by Dr. Karcher were not only material to the risk assumed but were far from true. If these statements influenced the judgment of the insurer in selling the policy and in accepting the risk, then they were material. *Rigby v. Metropolitan Life Insurance Co.,* 240 Pa. 332, 87 A. 428. Where it ap-

pears that an insured has made false statements in an application for a life insurance policy, the question of the materiality of such statements must be submitted to the jury if they are doubtful. If, however, the statements are palpably and manifestly material to the risk, it is the duty of the court to rule as a matter of law that they are material.

Dr. Hammond testified that had it been reported that in 1943 the applicant had been given an electrocardiogram, the company would have insisted on one in 1953. This inquiry would have brought the insurer in contact with the stomach specialist, Dr. Hershenson, who had been treating the applicant. Dr. Hammond further pointed out that with the history of the case revealed, the insurer would have rejected the risk.

In *McInerney v. Metropolitan Life Insurance Co.*, 152 Pa. Superior Ct. 636, 33 A. 2d 259, this Court held that where the facts prove a breach of condition, the case required the entry of judgment for the defendant as a matter of law.

The order of the court below is reversed and the verdict of the jury reinstated and judgment entered thereon.