In re UFG INTERNATIONAL, INC., Debtor.

AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, Plaintiff,

v.

UFG INTERNATIONAL INC., Alan Nisselson, as Trustee of the Bankruptcy Estate of U.F.G. International, Inc., Underwriters Financial Group, Inc., Eva H. Posman, as Trustee of the Bankruptcy Estate of Underwriters Financial Group, Inc., Donald P. Ferrarini, Bruno Rumignani, Howard Miller, Barry Keshner, Paul Savas, James Sweitzer, Burton Matfus, deceased, Estate of Burton Matfus, Does 1–50, Atlantic Mutual Insurance Company and Centennial Insurance Company d/b/a Atlantic Mutual Companies, Driller, Inc., CPF Premium Funding, Inc., John R. Lakian, George R. Begley, Gerling America Insurance, Abbey Blatt, individually, and as a representative of a purported Class of Plaintiffs, Defendants.

Bankruptcy Nos. 95B43641(JHG), 95B45774(JHG).
Adv. No. 96–8712A(JHG).

United States Bankruptcy Court, S.D. New York.

April 17, 1997.

As Corrected May 20, 1997.

Peterson & Ross, by James A. Skarszynksi, T. David Ackerman and Evan Shapiro, New York City, for Plaintiff.

O'Donnell, Ferebee, McGonigal & Stone by William C. Ferebee, Houston, TX, for Defendant Driller's Inc.

Wolf Popper Ross Wolf & Jones, L.L.P. by Chet B. Waldman, New York City, for Defendant Abbey Blatt.

Rosenman & Colin, L.L.P. by Bertram Kaminiski, New York City, for Defendant Gerling America Insurance.

Gold & Wachtel, L.L.P. by Steven J. Cohen, New York City, for the Chapter 11 Trustee, Alan Nisselson, Esq.

Ross & Hardies, by Marshall Beil, New York City, for Defendants John R. Lakian and George P. Begley.

Eva H. Posman, New York City, for Eva H. Posman, Trustee of the Bankruptcy Estate of Underwriters Financial Group, Inc.

Friesner & Salzman, L.L.P. by Bruce A. Barnett, Great Neck, NY, for Defendant Atlantic Mutual Companies.

Slatt & Lane, by Shepard Lane, New York City, for Defendant Donald P. Ferrarini.

Bruno Rumignani, Wantagh, NY, Defendant Pro se.

Howard Miller, New York City, Defendant Pro se.

Leitner & Getz, L.L.P., New York City and LeBoeuf, Lamb, Greene & Macrae, L.L.P., by Amy Levine, New York City, for the Estate of Burton Matfus.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

JEFFRY H. GALLET, Bankruptcy Judge.

### I. INTRODUCTION

Plaintiff Agricultural Excess and Surplus Insurance Company ("AESIC") sues to rescind a certain insurance policy and for a declaration that it has no liability as to certain claims. Defendants Drillers, Inc., Abbey Blatt, Gerling America Insurance Company, Alan Nisselson, Esq., as Chapter 11 Trustee for Underwriters Financial Group International, Inc. ("UFGI"), John R. Lakian, George P. Begley, Eva Posman, Esq., as Chapter 11 Trustee for Underwriters Financial Group, Inc. ("Underwriters"), Atlantic Mutual Insurance Companies, Donald P. Ferrarini, Bruno Rumignani, The Estate of Burton Matfus and Howard Miller (the "Movants") move[1] for summary judgment dismissing this adversary proceeding. The Movants assert that since there is no genuine issue as to any material fact, as a matter of law, AESIC cannot rescind the Policy ("the Policy") issued to UFGI and Underwriters (collectively "UFG") on the grounds that certain of its directors and officers misrepresented or omitted certain facts in the answer to Question # 22 on the Application for the Policy. The Movants argue that pursuant to the "plain meaning" of the Policy, AESIC's remedy for any misrepresentation or omission in regard to Question # 22 is exclusion from coverage for that misrepresentation or omission as opposed to rescission.

### II. FACTS

AESIC issued "Directors' and Officers' Liability Insurance Policy Including Reimbursement Policy No. NSP2107748" to UFG for the Policy period February 23, 1995 to February 22, 1996 at 12:01 a.m. Question # 22 of the Policy's application asked the applicants to disclose if:

[T]he undersigned or any Director or Officer proposed for this insurance [is] aware of any fact, circumstance or situation in-

---

1. Subject matter jurisdiction arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(E).

volving the Company or its Subsidiaries or the Directors or Officers of the Company or its Subsidiaries which he has reason to believe might result in any future claim?

If "Yes," provide details:

In addition, Question # 22 contains the following clause:

> IT IS AGREED THAT IF KNOWLEDGE OF ANY SUCH FACT, CIRCUMSTANCE OR SITUATION EXISTS, ANY CLAIM OR ACTION SUBSEQUENTLY ARISING THEREFROM SHALL BE EXCLUDED FROM COVERAGE, (emphasis in the original)

The application also contains a general provision below the signature lines for the Chief Executive Officer and the Chairman of the Board of Directors which provides in part that:

> It is further agreed by the Company and the Directors and Officers that the statements in the Proposal Form or in any material submitted therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, however, that except for the material facts or circumstances known to the person(s) who subscribed the Proposal Form, any misstatement or omission in such Proposal Form or materials submitted therewith in respect of a specific WRONGFUL ACT by a particular DIRECTOR or OFFICER or his cognizance of any matter which he has reason to suppose might afford grounds for a future CLAIM against him shall not be imputed to any other DIRECTOR or OFFICER for purposes of determining the validity of this

Policy as to such other DIRECTOR or OFFICER. (emphasis in the original)

The application was executed on February 24, 1995, on behalf of Underwriters by Donald P. Ferrarini, as Chairman of its Board of Directors, and Bruno Rumignani, as its Executive Vice President. In response to Question 22, the Applicants answered "Yes" but did not provide any details. In response, on March 1, 1995, AESIC advised UFG:

> IN RESPONSE TO QUESTION # 22 WE NEED A MORE DEFINITIVE ANSWER. AS YOU WELL KNOW THE KNOWLEDGE QUESTION ON THE D & O APP IS CRUCIAL. I THINK THE RESPONSE GIVEN IS TOO NEBULOUS.
>
> I AM RETURNING THE ORIGINAL APP TO YOU TODAY. THE INSURED HAS TO BE MORE PRECISE ON THE RESPONSES IN WHICH THEY REFER TO THE 10K ON THE APPLICATION. (emphasis in the original)

On March 8, 1995, AESIC received a revised Application form from UFG. On this document, the answer to Question # 22 was changed to "No" and initialed by a party not yet identified. Thereafter, the Policy was issued.[2] In April 1995, AESIC issued a "Midterm Endorsement Binder" to the Policy which increased the annual aggregate limit of liability under the Policy to $3 million effective April 26, 1995.[3] On September 21, 1995, AESIC canceled the Policy.[4]

On or about August 22, 1995, UFGI filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code (the "Code"). On December 11, 1995,

---

2. There seems to be some discrepancy as to when the Policy was issued. The Movants argue that the Policy was issued on February 24, the date the Application was executed. AESIC asserts that the Policy was not issued until April 6, 1995 after all Binder requirements were met and the premium was paid.

3. AESIC asserts that this Midterm Endorsement was actually issued on May 1, 1995 and was expressly made subject to certain conditions, including AESIC's right to flat cancel the coverage at its discretion.

4. Again, there seems to be some discrepancy as to when the Policy was canceled. The Movants claim that AESIC sent a letter on September 21,

1995 to counsel for UFG and Underwriters informing them that AESIC had determined to rescind the Policy which it considered void *ab initio*. The Movants claim that the Midterm Endorsement Binder was also canceled by this letter. On the other hand, AESIC asserts that it advised UFG and Underwriters that it canceled the Midterm Endorsement Binder and then the entire Policy by letters dated June 27, 1995 and June 28, 1995 respectively. However, AESIC does not dispute the correspondence sent to UFG and Underwriters on September 21, 1995, which reiterated the cancellation of the Policy.

Underwriters, the parent of UFGI, filed a petition for reorganization under Chapter 11 of the Code. On December 14, 1995, an Order was entered authorizing the joint administration of the estates of UFGI and Underwriters. On June 10, 1996, AESIC filed its Adversary Proceeding Complaint. The Complaint seeks rescission of the Policy or declaratory relief finding that AESIC has no obligation to the Defendants pursuant to the terms, conditions, and limitations of the Policy. The primary basis for rescission of the Policy or the declaratory relief sought by AESIC is alleged material misrepresentations and/or omissions in the Application for the Policy.

## III. THE LAW

### A. Standard for Summary Judgment

The Movants have moved for summary judgment under Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056. Summary judgment is appropriate if the court determines that the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *In re Ionosphere Clubs, Inc.*, 147 B.R. 855, 860 (Bankr.S.D.N.Y.1992).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The allegations of the non-movant are to be taken as true and are to be given the benefit of doubt when they conflict with those of the movant. *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992); *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *Burtnieks v. City of New York*, 716 F.2d 982, 985–86 (2d Cir.1983).

The moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *In re Ionosphere Clubs, Inc.*, 147 B.R. at 861. That burden can be satisfied by demonstrating the absence of evidence supporting the non-movant's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54. When a motion for summary judgment is made and supported by the movant, Rule 56(e) requires the non-moving party to set forth specific facts demonstrating that genuine issues of material fact remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party may not defeat a properly supported motion for summary judgment by relying on self-serving and conclusory statements concerning the true nature of the facts. *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983). As the Supreme Court has noted, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1355–56.

### B. Interpretation of Insurance Policies

The interpretation of insurance policies is governed by state law. *New York v. Blank*, 27 F.3d 783, 788 (2d Cir.1994) (*citing United States v. Kimbell*, 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979); *Olin Corp. v. Consolidated Aluminum Corp.*, 807 F.Supp. 1133, 1140 (S.D.N.Y. 1992), *aff'd in part, vacated in part*, 5 F.3d 10, 14–15 (2d Cir.1993); *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1148 (2d Cir.1989)). Under New York law, "a court must interpret an insurance policy 'to give effect to the intent of the parties as expressed in the clear language of the contract [ ]' and to enforce its clear and unambiguous provisions." *Home Insurance Co. v. Spectrum Information Technologies*, 930 F.Supp. 825, 844 (E.D.N.Y.1996) (*citing Vil-*

*lage of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995) (citations omitted)). Thus, when interpreting a contract, the "plain meaning" of words and phrases should be given effect. *Paine-Webber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2d Cir.1996) (emphasis added). Where " 'the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law,' and a claim turning on that interpretation may thus be determined by summary judgment or by dismissal." *Id.* (quoting *American Express Bank Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dept.1990)).

▇▇▇ However, where the language in an insurance policy is ambiguous, the court should consider extrinsic evidence to determine the parties' intent. *Home Ins. Co.,* 930 F.Supp. at 844–45 (citing *McCostis v. Home Ins. Co. Ind.,* 31 F.3d 110, 113 (2d Cir.1994)). This is especially true in respect to exclusionary clauses where exceptions from policy coverage must be specific and clear and are governed by a strict and narrow construction. *United Nat'l Ins. Co. v. Horning, Ltd.,* 882 F.Supp. 310, 312 (W.D.N.Y.1995). Furthermore, " '[t]he insurer generally bears the burden of proving that the claim falls within the scope of an exclusion,' by demonstrating that the 'exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.' " *Sylvan Beach,* 55 F.3d at 115 (quoting *Sea Ins. Co. v. Westchester Fire Ins. Co.,* 51 F.3d 22, 26 (2d Cir.1995)). *See, Home Ins. Co.,* 930 F.Supp. at 845. Finally, the general rule is that ambiguities in an insurance policy are to be construed against the insurer in favor of the insured. *Sea Ins. Co., Ltd v. Westchester Fire Ins. Co.,* 849 F.Supp. 221, 224 (S.D.N.Y.1994) *aff'd* 51 F.3d 22 (2d Cir.1995).

*C. Material Misrepresentations in Insurance Applications*

▇▇▇ Under New York law, an insurance policy issued in reliance on material misrepresentations is void *ab initio. See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan,* 77 F.3d 48, 52 (2d Cir.1996) (citations omitted); *see also* N.Y. Ins. Law § 3105. A

misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such a contract." N.Y. Ins. Law § 3105(b). A misrepresentation is defined as a false "statement as to past or present fact, made to the insurer by ... the applicant for insurance ... at or before the making of the insurance contract as an inducement to the making thereof." *Id.* § 3105(a).

▇▇▇ The test for determining whether a misrepresentation is material "is whether a failure to furnish a true answer defeats or seriously interferes with the exercise of the insurance company's right to accept or reject the application. The major question is 'whether the company has been induced to accept an application which it might otherwise have refused.' " *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.,* 53 A.D.2d 214, 216–17, 385 N.Y.S.2d 308, 311 (1st Dept. 1976), *aff'd,* 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977) (quoting *Geer v. Union Mutual Life Ins. Co.,* 273 N.Y. 261, 269, 7 N.E.2d 125 (1937)). *See Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.,* 848 F.2d 30, 32–34 (2d Cir.1988) (the question of materiality depends on whether the truth would have impacted the insurer's decision to accept the risk or set the premium); *Mutual Benefit Life Ins. Co. v. Morley,* 722 F.Supp. 1048, 1050–51 (S.D.N.Y.1989). An insurer does not need to prove that it would not have issued a policy at all, but that the policy in question would not have been issued had the insurer known of the misrepresentation. *Aetna Casualty & Surety Co. v. Retail Local 906,* 921 F.Supp. 122, 131 (E.D.N.Y.1996), *aff'd,* 106 F.3d 34 (2d Cir.1997) (citing *JMR Elecs. Corp.,* 848 F.2d at 32–34 (2d Cir.1988)). It is no defense to an action for recision that a misrepresentation was innocently made as long as the misrepresentation was material. *Vella v. The Equitable Life Assurance Society of the United States,* 887 F.2d 388, 391 (2d Cir.1989) (citing *Process Plants Corp.,* 53 A.D.2d at 216, 385 N.Y.S.2d at 310.) Likewise, an omission is "as much a misrepresentation as a false affirmative statement." *Morley,* 722 F.Supp. at 1051 (citations omitted).

■ Whether an insured made a misrepresentation and whether that misrepresentation was material are usually questions of fact for trial. *JMR Elecs. Corp.*, 848 F.2d at 32. However, "[w]here the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Id.* (*citing Process Plants Corp.*, 53 A.D.2d at 216, 385 N.Y.S.2d at 310–11).

## IV. DECISION

The Movants argue that, as a matter of law, AESIC is not entitled to rescind the Policy based on its claim that Question # 22 in the application was answered falsely and AESIC materially relied on the veracity of that statement in determining whether to issue the Policy. First, the Movants assert that AESIC has not demonstrated that it considered the answer to Question # 22 material to the decision to issue the Policy. They assert that the Policy was issued, and in effect, on February 23, 1995, although the application was executed on February 24, 1995. They contend that this alone proves that AESIC could not have materially relied on Question # 22.

Second, the Movants assert that under the plain meaning of the policy, by inserting "SHALL BE EXCLUDED FROM COVERAGE" (emphasis in the original) into the language of Question # 22 of the Application, AESIC assumed that certain applicants would answer Question # 22 untruthfully. They argue that the existence of the exclusionary language in Question # 22 demonstrates that, not only is the Policy not conditioned upon the truth of the representations in Question # 22, but, also, that, as a matter of law, AESIC has foregone the remedy of recision for a misrepresentation in response to Question # 22 in favor of the remedy of exclusion.

The Movants gloss over the paragraph at the end of the Application, which provides that AESIC materially relies on all answers in the Application. However, they assert that under contract law, since there is a conflict between the specific exclusionary clause in Question # 22 and a general clause at the end of the application, I should give effect to both clauses and find that the exclusionary clause applies to misrepresentations in Question # 22, and the general clause providing that AESIC materially relies on all answers in the application should to any other misstatements.

■ Both arguments are unpersuasive. While the Movants assert that the Policy was issued and became effective on February 23, 1995, and was executed the next day, AESIC counters that the Policy was not issued until April 6, after all the binder requirements were met and the premium was paid. As exhibits to its opposition papers, AESIC provides correspondence that may indicate that the Policy was not issued until after February 23, 1995. There is the letter dated March 1, 1995, by which AESIC informed UFG that its answer to Question # 22 was insufficient and asked for a more "definitive answer." There is also a letter dated March 6, 1995, from AESIC transmitting a binder for the Policy and stating that the Policy would be issued "when all the conditions of the Binder have been met, including payment of the premium due." There is an issue of fact concerning the date the Policy was issued and became effective. I cannot find, as a matter of law, AESIC did not materially rely on the answer to Question # 22 in the Application.

■ Likewise, the plain language of the Policy does not lead me to the conclusion that there are no issues of fact as to whether AESIC materially relied on the answer to Question # 22. Contract law mandates that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *Proyecfin De Venezuela, S.A., v. Banco Indus. De Venezuela, S.A.*, 760 F.2d 390, 395–96 (2d Cir.1985) (*citing* Corbin on Contracts § 547, at 172–73 (1960)). It is also true that where there is an inconsistency between a specific provision and a general provision in a contract, the specific provision controls. *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174, 133 N.E.2d 688, 690 (1956). I do not read the plain language of the Policy as limiting AESIC's remedy for misstatements in Question # 22 to exclusion. In *Bird v. Penn Cent.*

*Co.*, 334 F.Supp. 255 (E.D.Pa.1971), the Court, in construing a nearly identical exclusionary clause for future lawsuits in a directors and officers insurance policy, rejected the argument that the exclusionary coverage provision provided the insurer with complete protection, so that any fraud involved in answering the question concerning future lawsuits would be immaterial. *Id.* at 259. It stated that this "argument concerning limitation of coverage was misplaced." *Id.* The Court ultimately found that "[i]f fraudulent statements in the application 'influenced the judgment of the insurer in selling the policy and in accepting the risk, then they were material.'" *Id.* (*quoting Karcher v. Security Mutual Life Ins. Co.*, 140 A.2d 852, 854, 186 Pa.Super. 580, 584 (1958)). The Court construed the exclusionary provision as the insurer's attempt to gain information regarding the nature and scope of the insured risk, as opposed to merely serving as protection for dishonest answers. *Bird*, 334 F.Supp. at 258–59. It found that had the insurers been appraised of certain undisclosed facts by the potential insureds, the policy might not have been issued or a higher premium might have been requested. *Id.* at 259.

I agree with the *Bird* Court's reasoning. Reading the plain language of the Policy, I do not interpret the exclusionary provision to limit AESIC's remedy for misrepresentations to exclusion of coverage for those misrepresentations. I find that this provision was aimed at gaining knowledge concerning UFG's background in order to determine the risks for AESIC if it were to insure UFG. This interpretation is buttressed by the two preceding questions, which inquire as to pending lawsuits against UFG.[5] Each Question contains exclusionary language stating "ANY CLAIM ARISING THEREFROM IS EXCLUDED FROM THE PROPOSED COVERAGE." (emphasis in the original) These provisions are intended to obtain background information concerning the risk of the potential insured. Therefore, the answer to Question # 22 could produce information that AESIC materially relied on in deciding whether to issue the Policy. I do not read the exclusionary language in Question # 22 to mean that AESIC knowingly and purposely sought to limit its recovery for dishonest statements or misrepresentations to exclusion from coverage because it suspected that this question would not always be answered truthfully. To interpret the Policy this way, as the Movants suggest, would require me to go outside the "four corners" of the document and add meaning to the Policy not conveyed by its plain language.

The Movants argue that because UFG first answered "Yes" to the possibility of future claims and then crossed this response out and answered "No" when asked to elaborate, coupled with the fact that UFG had listed pending actions against the company in response to the two preceding questions, AESIC was on notice that there might be circumstances existing that could lead to future causes of action against UFG. The Movants assert that because AESIC should have been and was on notice of the possibility of future actions, AESIC could not have materially relied on the answer to Question # 22. Whether AESIC had notice of any future claim, which would support the argument that AESIC could not have materially relied on the answer to Question # 22, is also a question of fact.

## V. CONCLUSION

The Movants have failed to show that there are no genuine issues of fact concerning whether AESIC materially relied on the answer to Question # 22. Therefore, the

---

5. Question # 20 asks whether:
   During the last 5 years, has the Company or its Directors or Officers been involved in, or had any knowledge of: a) Any pending Anti–Trust, Copyright or Patent Litigation? b) Any Civil or Criminal Action or Administrative Proceeding involving a violation of any Federal or State Security Law or Regulation? c) Any Civil or Criminal Action or Administrative Proceeding involving a violation of any Federal or State Anti–Trust or Federal Trade Law? d) Any Representative Actions, Class Action or Derivative suits?
   Question # 21 asks:
   Have there been during the last 5 years, or are there now pending, any suits against any person proposed for this insurance in their capacity as either Director, Officer or employee of the Company or its Subsidiaries?

motions for summary judgment are denied. I do not reach the issue of whether the Movants are covered under the Policy.

Settle Order.